1  **Kanner & Whiteley, L.L.C.**
   Allan Kanner (SBN 109152)
2  a.kanner@kanner-law.com
   Kanner & Whiteley, L.L.C.
3  701 Camp Street
   New Orleans, LA 70130
4  (504) 524-5777
5
6  *Counsel for Plaintiff and the Proposed*
7  *Class*
8
                    **UNITED STATES DISTRICT COURT**
9                   **CENTRAL DISTRICT OF CALIFORNIA**
10
11 | | Case No.: 24-cv-1982
12 | |
13 | | **CLASS ACTION COMPLAINT**
   | |
14 JORDAN EISMAN, on behalf of himself and | 1. **BREACH OF EXPRESS**
15 all others similarly situated, | **WARRANTY;**
16         Plaintiffs, | 2. **BREACH OF IMPLIED**
   | **WARRANTY;**
17              v. | 3. **FRAUD (AFFIRMATIVE**
18 JOHNSON & JOHNSON CONSUMER, | **MISREPRESENTATION,**
   INC., KENVUE, INC., | **OMISSION, AND**
19 | **CONCEALMENT);**
20         Defendants. | 4. **NEGLIGENT**
21 | **MISREPRESENTATION AND**
   | **OMISSION;**
22 |
23 | 5. **VIOLATION OF STATE**
   | **CONSUMER PROTECTION LAWS**
24 |
25 | 6. **NEGLIGENCE**
26 | 7. **UNJUST ENRICHMENT**
27 | <u>JURY TRIAL DEMANDED</u>
28

CLASS ACTION COMPLAINT

Plaintiff Jordan Eisman ("Plaintiff"), by his undersigned counsel, on behalf of himself and all persons similarly situated, brings this Complaint against Defendants Johnson & Johnson Consumer, Inc., and Kenvue Inc. (referred to collectively as "Defendants" and, at times, individually as each "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1.     This case arises from contaminated and wrongly manufactured shampoo products containing benzene that were designed, manufactured, marketed, distributed, packaged, and/or sold by Defendants (identified and defined *infra*) in the United States. The specific coal tar shampoo products are the Neutrogena T/Gel product or brand name including Neutrogena T/Gel Therapeutic Shampoo—Original Formula and Neutrogena T/Gel Therapeutic Shampoo—Extra Strength (collectively, the "Coal Tar Shampoo Products"). These Coal Tar Shampoo Products are not merchantable and are not of the quality represented by Defendants named herein.

2.     Defendants' Coal Tar Shampoo Products contain dangerously high, undisclosed levels of benzene, a hazardous genotoxic substance. These dangerously high levels of benzene are not disclosed by Defendants and were only discovered very recently by testing of Defendants' Coal Tar Shampoo Products.

3.     Defendants sought to profit at consumers' expense by falsely labelling and selling Coal Tar Shampoo Products that contained undisclosed levels of benzene. Benzene is typically used in the manufacture of gasoline and other industry chemicals or textiles. Because of its health effects, in 2011 the United States Environmental Protection introduced regulations that

1

lowered benzene content in gasoline.[1] Meanwhile, Plaintiff and other class members directly and unknowingly purchased Defendants' Coal Tar Shampoo Products to apply to treat their scalps when the products contained undisclosed levels of benzene impurities.

4.   Plaintiff brings this action for economic damages and injunctive relief on behalf of all persons who paid for Defendants' Coal Tar Shampoo Products wrongly manufactured, sold, labeled, marketed, and distributed in the United States.  Defendants' Coal Tar Shampoo Products contained high levels of benzene. Defendants' Coal Tar Shampoo Products were of lesser quality and worthless (or certainly worth less) through unacceptable and undisclosed levels of benzene.

5.   At all times during the period alleged herein, Defendants represented and warranted to consumers and others that their Coal Tar Shampoo Products were comprised of the materials disclosed on the products' labels and were merchantable and fit for use. Yet, Defendants knowingly, fraudulently, and/or negligently manufactured, labeled, marketed, and/or sold their Coal Tar Shampoo Products that contained extremely high levels of the carcinogenic substance benzene. Defendants have been unjustly enriched through the sale of these knowingly adulterated and/or misbranded products.   Defendants' conduct also constitutes actionable fraud, consumer fraud, negligence, and other violations of law as set forth herein.

---

[1] EPA Gasoline Mobile Source Air Toxics, *available at* https://www.epa.gov/gasoline-standards/gasoline-mobile-source-air-toxics (last visited Feb. 11, 2024).

CLASS ACTION COMPLAINT

# **PARTIES**

### **A.** **Plaintiff**

6.     Plaintiff Jordan Eisman is a citizen of California. During the class period, Plaintiff paid money for one or more of Defendants' Coal Tar Shampoo Products. Specifically, Plaintiff purchased at least one or more Coal Tar Shampoo Products, manufactured and sold at retail to Plaintiff and other consumers as follows. By way of example, Plaintiff purchased Neutrogena T/Gel Therapeutic Shampoo—Extra Strength, in February 2021. Defendants expressly and impliedly warranted to Plaintiff that the Coal Tar Shampoo Products that Plaintiff purchased were merchantable and of the represented quality and did not contain any undisclosed substances or risks. But in fact, Plaintiff purchased product that was not of the represented merchantability or quality. Plaintiff would not have paid money for Defendants' Coal Tar Shampoo Products but for their concealment of the benzene levels in those products. Further, Plaintiff used Defendants' Coal Tar Shampoo Products to treat his scalp, not knowing the products were contaminated with harmful levels of benzene.  Plaintiff thus suffered cellular and genetic injury and suffered an increased risk that Plaintiff will develop further personal harm injury in the future as a result of such exposure.

### **B.** **Defendants**

7.     Defendant Johnson & Johnson Consumer, Inc. ("Johnson & Johnson") is a Delaware corporation with its principal place of business in New Brunswick, New Jersey. At all times material to this action, Johnson & Johnson has been engaged in the manufacture, sale, marketing, and/or distribution of adulterated and/or misbranded Coal Tar Shampoo

Products in the United States, including, but not limited to, the aforementioned Neutrogena T/Gel Therapeutic shampoo product line.

8.     Defendant Kenvue Inc. ("Kenvue") is a Delaware corporation with its principal place of business in Skillman, New Jersey. At all times material to this action, Kenvue has been engaged in the manufacture, sale, marketing, and/or distribution of adulterated and/or misbranded Coal Tar Shampoo Products in the United States, including, but not limited to, the aforementioned Neutrogena T/Gel Therapeutic shampoo product line.

9.     Upon information and belief, one or more other entities manufactured, distributed, marketed, and/or sold Coal Tar Shampoo Products during the class period. The true names, affiliations, and/or capacities of John Doe Defendants are not presently known. However, each John Doe proximately caused damages to Plaintiff and other class members as alleged herein, and each John Doe is liable to Plaintiff and other class members for the acts and omissions alleged below as well as the resulting damages. Plaintiff will amend the complaint to allege the true names and capacities of the John Does when evidence reveals their identities.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed class is a citizen of a state different from that of Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 class members, and (d) none of the exceptions under the subsection apply to this action.

CLASS ACTION COMPLAINT

11.     This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1407, and because Defendants have sufficient minimum contacts in California, and because Defendants have otherwise intentionally availed themselves of the markets within California through their business activities, such that the exercise of jurisdiction by this Court is proper and necessary.  Further, Plaintiff resides and purchased product in California.

12.     Venue is proper in this District because at least one plaintiff resides in this District, 28 U.S.C. § 1391(b)(1); "a substantial part of the events or omissions giving rise to the claim occurred" in this District, 28 U.S.C. § 1391(b)(2); and Defendants are subject to the personal jurisdiction of this Court, 28 U.S.C. § 1391(b)(3).

## FACTUAL ALLEGATIONS

### A.     Benzene Is a Harmful Substance

13.     Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology Program ("NTP), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[2] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 … and was found to be carcinogenic to

---

[2] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis added).

CLASS ACTION COMPLAINT

humans (Group 1), a finding that has stood since that time."[3] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on sufficient evidence of carcinogenicity in humans, sufficient evidence of carcinogenicity in experimental animals, and strong mechanistic evidence …. The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[4]

Likewise, the Food and Drug Administration ("FDA") recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[5] and classifies benzene as a "Class 1" solvent that should be a "avoided."[6] FDA's Guidance for Industry states that "Solvents in Class 1 … should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[7]

14.    Aside from carcinogenicity, benzene is associated with numerous side effects, including vomiting, stomach irritation, dizziness, sleepiness, convulsions, irregular heartbeat, tissue injury, bone marrow damage, decrease in red blood cells, anemia, irregular menstrual cycles, low fertility, and excess bleeding.

### B.    Benzene Contamination in Defendants' Coal Tar Shampoo Products

---

[3] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017:Lyon, France), at p. 33.
[4] *Id.* at 34.
[5] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.
[6] https://www.fda.gov/media/71737/download.
[7]    FDA    Guidance    for    Industry,    Q3C    Impurities:    Residual    Solvents    (6/30/2017),    available    at https://www.fda.gov/media/71736/download.

CLASS ACTION COMPLAINT

15.    The composition and properties of a coal tar depend primarily on the temperature of the carbonization and to a lesser extent on the nature (source) of the coal used as feedstock.

16.    In general, coal tars are complex combinations of hydrocarbons, phenols, and heterocyclic oxygen, sulfur, and nitrogen compounds. Over 400 compounds have been identified in coal tars, and as many as 10,000 may actually be present.

17.    Benzene is a substance found in, and that may be removed through refinement from, coal tar.

18.    Manufacturers such as Defendants have an obligation to reduce or eliminate benzene from their Coal Tar Shampoo Products.

19.    Manufacturers such as Defendants also have an obligation to test their Coal Tar Shampoo Products for undisclosed and/or potentially harmful substances, such as benzene.

20.    Defendants did not properly manufacture their Coal Tar Shampoo Products to reduce or eliminate benzene or properly test and monitor their Coal Tar Shampoo Products for the presence of benzene.

21.    Defendants never disclosed that any of their Coal Tar Shampoo Products contained any amount of benzene or posed any health risks associated with benzene.

22.    However, Defendants' Coal Tar Shampoo Products did in fact contain benzene. Testing, for instance, reveals that Defendants' Coal Tar Shampoo Products contain benzene between 0.82ppm to 1.49ppm (Neutrogena T/Gel Therapeutic Shampoo—Original Formula) and 4.36ppm (Neutrogena T/Gel Therapeutic Shampoo—Extra Strength).

23.    Again, there should not be any benzene in Coal Tar Shampoo Products. By

7

comparison, Defendants or other firms recently recalled various sunscreen products for containing benzene levels up to 2ppm. The levels in Coal Tar Shampoo Products are at least the same, if not greater.

**C. Fraudulent Concealment, Tolling, and Continuing Violations**

24.    Plaintiff's and other class members' causes of action could not and did not accrue prior to the filing of this complaint because Defendants actively concealed and did not reveal the presence of benzene in Coal Tar Shampoo Products.

25.    Plaintiff and other class members exercised reasonable diligence but could not discover Defendants' wrongful conduct earlier.

26.    For instance, Defendants did not reveal to the public that their Coal Tar Shampoo Products contained benzene, or the levels of benzene present, or the insufficient manufacturing processes Defendants utilized to manufacture the Coal Tar Shampoo Products.

27.    To the contrary, each Defendant continued to represent and warrant that the Coal Tar Shampoo Products were merchantable, fit for intended purpose, and of the quality and composition as marketed.

28.    Because of this, Plaintiff and other class members did not discover, nor could they have discovered through reasonable and ordinarily diligence, each Defendant's deceptive, fraudulent, and unlawful conduct alleged herein. Defendants' false and misleading explanations or obfuscations lulled Plaintiff and other class members into believing that the prices paid for Coal Tar Shampoo Products were appropriate despite their exercise of reasonable and ordinary diligence.

CLASS ACTION COMPLAINT

29.     Alternatively, any statute of limitation or prescriptive period is equitably tolled on account of fraudulent concealment. Defendants each affirmatively concealed from Plaintiff and other class members their unlawful conduct. Each Defendant affirmatively strove to avoid disclosing their knowledge or the true nature of their Coal Tar Shampoo Products.

30.     As a result of each Defendant's affirmative and other acts of concealment, any applicable statute of limitations affecting the rights of Plaintiff or other class members has been tolled. Plaintiff and/or other class members exercised reasonable diligence by, among other things, promptly investigating and bringing the allegations contained herein. Despite these or other efforts, Plaintiff was unable to discover, and could not have discovered, the unlawful conduct alleged herein at the time it occurred or at an earlier time so as to enable this complaint to be filed sooner.

31.     Defendants' wrongful conduct and obfuscation thereof constitutes continuing violations for purposes of any limitations period.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) against Defendants on Plaintiff's own behalf and on behalf of the Class(es) defined below, to the extent class members from these jurisdictions can be grouped together for purposes of class treatment:

> All individuals and entities in the United States and its territories and possessions who, within the applicable limitation periods to the present, paid any amount of money for Coal Tar Shampoo Products (intended for personal use) that were manufactured, distributed, or sold by Defendants.

33. Plaintiff also alleges the following Subclass:

> All individuals and entities in California and its territories and possessions who, within the applicable limitation periods to the present, paid any amount of money for a Coal Tar Shampoo Product (intended for personal use) that were manufactured, distributed, or sold by Defendants.

34. Excluded from the Class(es) are: (a) any judge or magistrate presiding over this action, and members of their families; (b) each Defendant and its employees, officers, directors, and agents; (c) each Defendant's legal representatives, assigns, and successors; and (d) all persons who properly execute and file a timely request for exclusion from any Court-approved class.

35. Plaintiff reserves the right to narrow or expand the foregoing class definitions, or to create or modify subclasses as the Court deems necessary.

36. Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class(es).

37. **Numerosity**: While the exact number of class members cannot be determined without discovery, they are believed to consist of potentially millions of consumers nationwide. The Class(es) are therefore so numerous that joinder of all members is impracticable.

38. **Commonality**: Common questions of law and fact exist as to all class members, including, but not limited to:

> a. Whether Defendants made express or implied warranties to Plaintiff and other class members regarding their Coal Tar Shampoo Products;

10

CLASS ACTION COMPLAINT

b. Whether Defendants' Coal Tar Shampoo Products contained undisclosed benzene impurities and the levels of such impurities;

c. Whether Defendants violated standards relating to the manufacture or testing of their Coal Tar Shampoo Products;

d. Whether Defendants falsely claimed that their Coal Tar Shampoo Products were merchantable, fit for intended purposes, and otherwise of the quality and composition represented;

e. Whether Defendants affirmatively or negligently misrepresented or omitted facts regarding their manufacture, sale, or testing of their Coal Tar Shampoo Products;

f. Whether Plaintiff and other class members have been economically injured, or are at greater risk of bodily injury in the future, as a result of each Defendant's unlawful conduct, and the amount of their damages;

g. Whether a common damages model can calculate damages on a class-wide basis;

h. When Plaintiff's and other class members' causes of action accrued; and

i. Whether each Defendant fraudulently concealed Plaintiff's and other class members' causes of action.

39.    **Typicality**: Plaintiff's claims are typical of other class members' claims. Plaintiff and other class members all suffered the same type of economic harm. Plaintiff has substantially the same interest in this matter as all other class members, and his claims arise

CLASS ACTION COMPLAINT

out of the same set of facts and conduct as the claims of all other class members.

40. **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has retained competent counsel experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation. Accordingly, Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of other class members. Plaintiff's claims are coincident with, and not antagonistic to, those of the other class members they seek to represent. Plaintiff has no disabling conflict with other class members and will fairly and adequately represent the interests of class members.

41. The elements of Rule 23(b)(2) are met. Each Defendant has acted on grounds that apply generally to all class members so that preliminary and/or final injunctive relief and corresponding declaratory relief are appropriate respecting the Class(es) as a whole.

42. The requirements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other class members have claims against Defendants, the likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues would not be efficient, timely, or proper. Judicial resources would be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiff's counsel, highly

CLASS ACTION COMPLAINT

experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation, foresee little difficulty in the management of this case as a class action.

## CAUSES OF ACTION

### FIRST COUNT

### BREACH OF EXPRESS WARRANTIES AGAINST DEFENDANTS

43.     Plaintiff alleges this claim for relief on behalf of himself and all similarly situated class members, both those in California and those in other states, the laws of which do not conflict with California law.

44.     Plaintiff incorporates the allegations in paragraphs 1-42 as though fully set forth herein.

45.     Plaintiff and each other class member as set forth in this subsection formed a contract with Defendants at the time they purchased Coal Tar Shampoo Products. The terms of the contract included the promises and affirmations of fact made by Defendants on the Coal Tar Shampoo Products' packaging and through marketing and advertising, including that the products would be of the quality and character as represented. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between class members and Defendants.

46.     Defendants expressly warranted that their Coal Tar Shampoo Products were fit for ordinary use, were safe and effective for their intended use, and did not contain any undisclosed impurities, substances, or risks.

47.     Defendants sold Coal Tar Shampoo Products that they expressly warranted were

13

CLASS ACTION COMPLAINT

manufactured and tested properly and did not contain any undisclosed impurities, substances, or risks. This includes statements in the product labeling and packaging that described the product as safe and effective without disclosing the presence or levels of benzene.

48.     Defendants' Coal Tar Shampoo Products did not conform to their express representations and warranties because the product was not manufactured, tested, or marketed properly to account for undisclosed impurities, substances, or risks.

49.     At all times relevant times, California and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

50.     At the time Defendants marketed and sold their Coal Tar Shampoo Products, each Defendant recognized the purposes for which the products would be used and expressly warranted the products were manufactured properly, tested properly, and did not contain any undisclosed impurities, substances, or risks. These affirmative representations became part of the basis of the bargain in every purchase by Plaintiff and every other class member.

51.     Each Defendant breached its express warranties with respect to its Coal Tar Shampoo Products as they were not of merchantable quality, were not fit for their ordinary purpose, and contained undisclosed impurities, substances, or risks.

52.     Plaintiff and each other class member would not have purchased the Coal Tar Shampoo Products had they known these drugs contained undisclosed benzene impurities, or that the products did not have the represented safety and efficacy profile. Or, alternatively, Plaintiff and each other class member would have paid less for the Coal Tar Shampoo

Products.

53.     Direct privity exists between Defendants and Plaintiff and each other class member.  Alternatively, direct privity is not required between each Defendant and Plaintiff and each other class member because, among other things, each Defendant is a manufacturer and made direct statements about the safety of its products and intended its statements and affirmations to flow to Plaintiff and to each other class member.

54.     As a direct and proximate result of each Defendant's breach of warranty, Plaintiff and each other class member have been injured and suffered damages in the amount of the purchase price of their medications, the purchase price of any replacement medications, and any consequential damages resulting from the purchases, in that the Coal Tar Shampoo Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

55.     Although Plaintiff does not seek to recover for physical injuries, Defendants' Coal Tar Shampoo Products carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's bodies.

56.     Pre-suit notice is not required, but even if it is, such notice was provided to each Defendant.

## **SECOND COUNT**

CLASS ACTION COMPLAINT

## BREACH OF IMPLIED WARRANTIES AGAINST DEFENDANTS

57.     Plaintiff alleges this claim for relief on behalf of himself and all similarly situated class members, both those in California and those in other states, the laws of which do not conflict with California law.

58.     Plaintiff incorporates the allegations in paragraphs 1-42 as though fully set forth herein.

59.     Plaintiff and each other class member formed a contract with each Defendant at the time they purchased the Coal Tar Shampoo Products. The terms of the contract include the promises and affirmations of fact made by each Defendant on the Coal Tar Shampoo Products' packaging and through marketing and advertising, including that the product would be of the quality and character as represented. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between class members and each Defendant.

60.     Each Defendant impliedly warranted that its Coal Tar Shampoo Products were fit for ordinary use, were safe and effective for intended use, and did not contain any undisclosed impurities, substances, or risks. This includes statements in the product labeling and packaging that described the product as safe and effective without disclosing the presence or levels of benzene.

61.     At the time Defendants marketed and sold their Coal Tar Shampoo Products, each Defendant recognized the purposes for which the products would be used and impliedly warranted the products were manufactured properly, tested properly, and did not contain any

16

undisclosed impurities, substances, or risks. These affirmative representations became part of the basis of the bargain in every purchase by Plaintiff and every other class member.

62.    At all times relevant times California and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

63.    Each Defendant was a merchant within the meaning of the above statute.

64.    Defendants' Coal Tar Shampoo Products constituted goods or products within the meaning of the products to which implied warranty attaches.

65.    Defendants were obligated to provide Plaintiff and each other class member as set forth in this subsection reasonably fit Coal Tar Shampoo Products for the purpose for which the product was sold and to conform to the standards of the trade in which Defendants are involved such that the product was of fit and merchantability quality.

66.    Defendants knew or should have known that their Coal Tar Shampoo Products were being manufactured and sold for the intended purpose and impliedly warranted that their Coal Tar Shampoo Products were of merchantable quality and fit for that purpose.

67.    Defendants breached their implied warranty because their Coal Tar Shampoo Products were not of merchantable quality, nor fit for the product's ordinary purpose, and did not conform to the standards generally applicable to such goods.

68.    Plaintiff and each other class member would not have purchased the Coal Tar Shampoo Products had they known these products carried undisclosed risks, or, alternatively, would not have purchased them on the same terms (e.g., purchased them for substantially less).

69.     To the extent applicable, direct privity is not required between each Defendant and Plaintiff or other class members because, among other things, each Defendant is a manufacturer and made direct statements about the safety of its products and intended its statements and affirmations to flow to Plaintiff and other class members. Further, Plaintiff and each other class member were intended third-party beneficiaries to the extent Defendants made any warranty or representation to a reseller who in turn resold Coal Tar Shampoo Products to consumers.

70.     As a direct and proximate result of each Defendant's breach of warranty, Plaintiff and each other class member have been injured and suffered damages in the amount of the purchase price of the Coal Tar Shampoo Products, in that the Coal Tar Shampoo Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

71.     Although Plaintiff does not seek to recover for physical injuries, Defendants' Coal Tar Shampoo Products carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's bodies.

72.     Pre-suit notice is not required, but even if it is, such notice was provided to each Defendant.

## **THIRD COUNT**
## **FRAUD (AFFIRMATIVE MISREPRESENTATION, OMISSION, AND CONCEALMENT) AGAINST DEFENDANTS**

73.     Plaintiff alleges this claim for relief on behalf of himself and of all similarly

situated class members, both those in California and those in other states, the laws of which do not conflict with California law.

74.   Plaintiff incorporates the allegations in paragraphs 1-42 as though fully set forth herein.

75.   Each Defendant affirmatively misrepresented material facts including, *inter alia*, that its Coal Tar Shampoo Products were not manufactured properly, were not tested properly, and contained any undisclosed impurities, substances, or risks.

76.   Defendants omitted material facts including, *inter alia*, that their Coal Tar Shampoo Products were not manufactured properly, were not tested properly, and contained any undisclosed impurities, substances, or risks. This includes statements in the product labeling and packaging that described the product as safe and effective without disclosing the presence or levels of benzene. Defendants' actions had the effect of fraudulently inducing customers to pay in whole or in part for Defendants' Coal Tar Shampoo Products – products which they knew or should have known did not comply with the applicable standards and contained undisclosed benzene impurities.

77.   Plaintiff and each other class member would not have purchased the Coal Tar Shampoo Products had they known these drugs contained undisclosed benzene impurities or that the products did not have the represented safety and efficacy profile. Or, alternatively, Plaintiff and each other class member would have paid less for the Coal Tar Shampoo Products.

78.   Each Defendant knew, or reasonably should have known, that its

misrepresentations were materially false or misleading or that the omission of material facts rendered such misrepresentations false or misleading.

79.    Each Defendant also knew, or had reason to know, that its misrepresentations and omissions would induce the Class(es) to pay for some or all of the cost of its Coal Tar Shampoo Products.

80.    Defendants' misrepresentations and omissions were material.

81.    Defendants actively concealed their misrepresentations and omissions from the Class(es), government regulators, and the public.

82.    To the extent applicable, Defendants intended their misrepresentations and omissions to induce Plaintiff, and each other class member as set forth in this sub-section, to pay for their Coal Tar Shampoo Products.

83.    But for these misrepresentations and omissions, Plaintiff and each other class member as set forth in this sub-section, would not have paid for Defendants' Coal Tar Shampoo Products. Or, alternatively, Plaintiff and each other class member would have paid less for the Coal Tar Shampoo Products.

84.    Defendants' conduct alleged herein demonstrates their intent to deceive Plaintiff and other class members. Each Defendant, *inter alia*, intentionally omitted material facts and made affirmative misrepresentations described herein about the Coal Tar Shampoo Products which it knew were false or inaccurate.

85.    To the extent applicable, Plaintiff and each other class member as set forth in this sub-section, were justified in relying on each Defendant's misrepresentations and omissions.

CLASS ACTION COMPLAINT

The same or substantively identical misrepresentations and omissions were communicated to each Class(es) member, including through product labeling or other statements by each Defendant. No reasonable consumer would have paid what they did for Defendants' Coal Tar Shampoo Products but for their unlawful conduct. To the extent applicable, reliance may be presumed in these circumstances.

86.     Although Plaintiff does not seek to recover for physical injuries, each Defendant's Coal Tar Shampoo Products carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's body.

87.     Plaintiff and each other class member as set forth in this sub-section were damaged by reason of each Defendant's misrepresentations and omissions alleged herein.

## FOURTH COUNT
## NEGLIGENT MISREPRESENATION AND OMISSION

88.     Plaintiff alleges this claim for relief on behalf of himself and all similarly situated class members, both those in California and those in other states, the laws of which do not conflict with California law.

89.     Plaintiff incorporates the allegations in paragraphs 1-42 as though fully set forth herein.

90.     Each Defendant had or undertook a duty to accurately and truthfully represent the quality, nature, and characteristics of its Coal Tar Shampoo Products.

91.     Each Defendant failed to exercise ordinary care in making or representing

statements (or in failing to disclose facts) concerning the quality, nature, and characteristics of its Coal Tar Shampoo Products.

92.    Each Defendant negligently misrepresented or omitted facts regarding the quality, nature, and characteristics of its Coal Tar Shampoo Products. This includes statements in the product labeling and packaging that described the product as safe and effective without disclosing the presence or levels of benzene. Defendants' actions had the effect of fraudulently inducing customers to pay in whole or in part for Defendants' Coal Tar Shampoo Products – products which they knew or should have known did not comply with the applicable standards and contained undisclosed benzene impurities.

93.    Each Defendant knew, or reasonably should have known, that its representations alleged herein were materially false or misleading or that the omission of material facts rendered such representations false or misleading. Each Defendant also knew, or had reason to know, that its misrepresentations and omissions would induce Plaintiff and each other class member as set forth in this sub-section to make purchases of Defendants' Coal Tar Shampoo Products.

94.    As a direct and proximate result of each Defendant's acts and omissions described herein, Plaintiff and each other class member as set forth in this sub-section have suffered harm and will continue to do so.

95.    Defendants' misrepresentations or omissions were material and a substantial factor in Plaintiff's and other class members' paying for Coal Tar Shampoo Products.

96.    Each Defendant intended its misrepresentations or omissions to induce Plaintiff

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and each other class member as set forth in this sub-section to make purchases of Coal Tar Shampoo Products, or had reckless disregard for same.

97.    But for these misrepresentations (or omissions), Plaintiff and each other class member as set forth in this sub-section would not have made purchases of Defendants' Coal Tar Shampoo Products. Or, alternatively, Plaintiff and each other class member would have paid less for Coal Tar Shampoo Products.

98.    Defendants' conduct alleged herein demonstrates their intent to deceive Plaintiff and other class members. Each Defendant, *inter alia*, intentionally omitted material facts and made affirmative misrepresentations described herein about the Coal Tar Shampoo Products which it knew were false or inaccurate.

99.    Plaintiff and each other class member as set forth in this sub-section were justified in relying on Defendants' misrepresentations or omissions. The same or substantively identical misrepresentations were communicated, and/or the same or substantively identical omissions were not communicated to each purchaser.

100.    Each Defendant owed a special duty to Plaintiff and each other class member on account of the special relationship that existed between the Defendant, as a seller of a product to be applied to the human body.  On account of the known or knowable application and use of the Coal Tar Shampoo Products, and each Defendant's superior knowledge and position as manufacturer, distributor, and seller of the Coal Tar Shampoo Products, each Defendant had a special duty to disclose risks to consumers such as Plaintiff and other class members.

101.    Although Plaintiff does not seek to recover for physical injuries, each

23

Defendant's Coal Tar Shampoo Products carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's body.

102.    Plaintiff and each other class member as set forth in this sub-section were damaged by reason of each Defendant's misrepresentation or omissions alleged herein.

## FIFTH COUNT
## VIOLATION OF CONSUMER PROTECTION LAW

103.    Plaintiff alleges this claim for relief on behalf of himself and all similarly situated class members, both those in California and those in other states, the laws of which do not conflict with California law.

104.    Plaintiff incorporates the allegations in paragraph 1-42 as though fully set forth herein.

105.    Defendants have violated the consumer protection statutes as follows:

    a.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et seq.*;

    b.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.*;

    c.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Rev. Stat. § 44-1522, *et seq.*;

    d.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*;

CLASS ACTION COMPLAINT

e.  Defendants violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus. Prof. Code § 17200, *et seq.*;

f.  Defendants violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;

g.  Defendants violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

h.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

i.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*;

j.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq.*;

k.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq.*;

l.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*;

m.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, *et seq.*;

n.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

o.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

p.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation 815 ILCS 505/1, *et seq.*;

q.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

r.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code Ann. § 714H, *et seq.*;

s.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

t.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

u.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

v.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

w.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

x.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

y.   Defendants engaged in unfair competition or unfair or deceptive acts or

26

CLASS ACTION COMPLAINT

practices in violation of Mich. Stat. § 445.901, *et seq.*;

z.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

aa.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

bb.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. § 407.0 10, *et seq.*;

cc.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

dd.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

ee.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

ff.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

gg.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

hh.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

ii.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

CLASS ACTION COMPLAINT

jj.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq*.;

kk.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq*.;

ll.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq*.

mm.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751, *et seq*.;

nn.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq*.;

oo.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq*.;

pp.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, *et seq*.;

qq.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq*.;

rr.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, *et seq*.;

ss.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq*.;

tt.   Defendants engaged in unfair competition or unfair or deceptive acts or

practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

uu.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq.*;

vv.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2451, *et seq.*;

ww.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

xx.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*;

yy.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

zz.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*;

aaa.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*; and

bbb.   Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 23 L.P.R.A. § 1001, *et seq.*, the applicable statute for the Commonwealth of Puerto Rico.

106.   Each Defendant's conduct constitutes trade or commerce or other actionable activity within the meaning of the above statutes.

107.   Each Defendant, directly or through its agents, employees, and/or subsidiaries,

violated the state statutes by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts on the labels for its Coal Tar Shampoo Products, including that: such products were inherently defective, unreasonably dangerous, not fit to be used for their intended purpose, and/or contained levels of benzene that rendered them unsafe and unfit.

108. Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the Coal Tar Shampoo Products, as detailed above, each Defendant engaged in one or more unlawful practices in violation of the above state statutes. Each Defendant's misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of the Coal Tar Shampoo Products were disseminated to Plaintiff and each other class member as set forth in this sub-section in a uniform manner. Defendants sold Coal Tar Shampoo Products that they expressly warranted were manufactured and tested properly and did not contain any undisclosed impurities, substances, or risks. This includes statements in the product labeling and packaging that described the product as safe and effective without disclosing the presence or levels of benzene.

109. Each Defendant's conduct as alleged herein constitutes unfair, deceptive, misleading, or otherwise actionable practices as to each Defendant's conduct concerning the ingredients and safety profile for the Coal Tar Shampoo Products. Each Defendant promised a safe and effective product, but the products were not as promised because their actual safety profile was not the same as that represented and bargained for.

CLASS ACTION COMPLAINT

110. To the extent applicable, each Defendant knew, intended, or should have known that its fraudulent and deceptive acts, omissions, or concealment would induce reliance and that reliance can be presumed under the circumstances. As a direct and proximate result of each Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and other class members have suffered damages – an ascertainable loss – in an amount to be proved at trial.

111. Each Defendant engaged in unlawful conduct by deliberately and knowingly engaging in misleading, deceptive, and false statements regarding the Coal Tar Shampoo Products in the course of each Defendant's business. Specifically, each Defendant represented that the Coal Tar Shampoo Products were safe and effective and did not carry any undisclosed risks. But this was not the case, as the products carried health risks that were not disclosed. Each Defendant made these misrepresentations, or omitted material information, in its marketing the Coal Tar Shampoo Products and in the Products' packaging, labeling, and instructions.

112. The existence of undisclosed risks would have been material to Plaintiff and other class members.

113. Plaintiff and other class members suffered ascertainable loss and actual damages as a direct and proximate result of each Defendant's concealment, misrepresentations, and/or failure to disclose material information in that Plaintiff and other class members would not have purchased the Coal Tar Shampoo Products, or, alternatively, would not have purchased on the same terms (e.g., purchased them for substantially less), had they known the truth.

114.   Although Plaintiff does not seek to recover for physical injuries, the Coal Tar Shampoo Products carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's body.

115.   To the extent applicable, pre-suit notice and/or a demand letter was sent to each Defendant prior to the filing of the Complaint.

## SIXTH COUNT
## NEGLIGENCE

116.   Plaintiff alleges this claim for relief on behalf of himself and all similarly situated class members, both those in California and those in other states, the laws of which do not conflict with California law.

117.   Plaintiff incorporates the allegations in paragraph 1-42 as though fully set forth herein.

118.   Each Defendant owed a duty to Plaintiff and each other class member to ensure its Coal Tar Shampoo Products were safe and effective, were manufactured properly, were tested properly, and did not contain any undisclosed impurities, substances, or risks.

119.   Each Defendant owed a duty to Plaintiff and each other class member because the latter were foreseeable, reasonable, and probably users of Coal Tar Shampoo Products, and victims of each Defendant's deceptive and wrongful conduct. Each Defendant knew, or should have known, that its Coal Tar Shampoo Products were not safe and effective, were not manufactured properly, were not tested properly, and contained undisclosed risks.

CLASS ACTION COMPLAINT

120. Each Defendant inadequately oversaw its own manufacture, distribution, marketing, and sale of its Coal Tar Shampoo Products, resulting in the Coal Tar Shampoo Products being sold to consumers without disclosure of the true character of the product.

121. Each Defendant maintained or should have maintained a special relationship with Plaintiff and each other class member, who were anticipated or intended direct and intended third-party beneficiaries, as it was obligated to ensure that its Coal Tar Shampoo Products were safe and effective, were manufactured properly, were tested properly, and did not contain any undisclosed risks.

122. Each Defendant's own actions and inactions created a foreseeable risk of harm to Plaintiff and each other class member.

123. Each Defendant breached duties owed to Plaintiff and each other class member by failing to exercise reasonable care sufficient to protect the interests and meet the needs of Plaintiff and each other class member.

124. Although Plaintiff does not seek to recover for physical injuries, the Coal Tar Shampoo Products carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's body.

125. As a direct and proximate result of each Defendant's negligent conduct, Plaintiff and each other class member suffered injury and are entitled to damages in an amount to be proven at trial.

**<u>SEVENTH COUNT</u>**

CLASS ACTION COMPLAINT

## **UNJUST ENRICHMENT**

126.   Plaintiff alleges this claim for relief on behalf of himself and all similarly situated class members, both those in California and those in other states, the laws of which do not conflict with California law.

127.   Plaintiff incorporates the allegations in paragraph 1-42 as though fully set forth herein.

128.   Each Defendant was unjustly enriched at the expense of Plaintiff and each other class member by virtue of their paying for each Defendant's Coal Tar Shampoo Products. Plaintiff and each other class member conferred a direct benefit on each Defendant by purchasing each Defendant's Coal Tar Shampoo Products either directly from Defendant or through a reseller.

129.   Each Defendant profited immensely from selling the Coal Tar Shampoo Products that carried undisclosed risks, that were not manufactured properly, and that were not tested properly.

130.   Plaintiff and each other class member were unjustly deprived of money obtained by each Defendant as a result of the improper amounts paid for Coal Tar Shampoo Products. It would be inequitable and unconscionable for each Defendant to retain the profit, benefit, and other compensation obtained from Plaintiff and each other class member as a result of each Defendant's wrongful conduct alleged.

131.   In the alternative to the other causes of actions alleged herein, Plaintiff and each other class member have no adequate remedy at law.

CLASS ACTION COMPLAINT

132.   Although Plaintiff does not seek to recover for physical injuries, the Coal Tar Shampoo Products carried undisclosed risks and resulted in physical impact to Plaintiffs and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's body.

133.   Plaintiff and each other class member are entitled to seek and do seek restitution from each Defendant as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by each Defendant by virtue of its wrongful conduct.

## **PRAYER FOR RELIEF**

For these reasons, Plaintiff prays for the following judgment:

A.   An order certifying this action as a class action;

B.   An order appointing Plaintiff as Class Representatives and appointing undersigned counsel as Class Counsel to represent the Class;

C.   A declaration that each Defendant is liable pursuant to each and every one of the above-enumerated causes of action;

D.   An order awarding appropriate preliminary and/or final injunctive relief against the conduct of each Defendant described herein;

E.   Payment to Plaintiff and class members of all damages, exemplary or punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including, but not limited to, the full amounts paid or reimbursed for the Coal Tar Shampoo Products and each Defendant's ill-gotten gains;

CLASS ACTION COMPLAINT

F.     An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class members;

G.     An award of statutory penalties to the extent available;

H.     Interest as provided by law, including, but not limited to, pre-judgment and post-judgment interest as provided by rule or statute; and

I.     Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all causes of action so triable.

Dated:  March 12, 2024                    By: */s/ Allan Kanner*

**Kanner & Whiteley, L.L.C.**
Allan Kanner (SBN 109152)
Conlee S. Whiteley (*PHV Pending*)
c.whiteley@kanner-law.com
Kanner & Whiteley, L.L.C.
701 Camp Street
New Orleans, LA 70130
(504) 524-5777

**Honik LLC**
Ruben Honik (*PHV Pending*)
David J. Stanoch, Of Counsel (*PHV Pending*)
ruben@honiklaw.com
david@honiklaw.com
1515 Market Street, Suite 1100
Philadelphia, PA 19102
(267) 435-1300

CLASS ACTION COMPLAINT